All right, good morning. On this matter, State of Nevada v. Wike, State Bar of Nevada v. Wike, case number 24-4402. Each side will have 15 minutes. If appellants would like to reserve time for rebuttal, please be aware that you are responsible for keeping track of your time, but I would like to know if you are going to reserve time. Yes, I would like to reserve three minutes. Three minutes. Okay, Mr. Hoagie, go ahead. You may begin whenever you're ready. Thank you. May it please the Court, Daniel Hoagie, representing the State Bar of Nevada. The issue before you is whether disciplinary costs imposed in attorney discipline pursuant to Nevada Supreme Court Rule 120 are dischargeable in bankruptcy under 11 U.S.C. 523A7. The Bankruptcy Court ruled that these were not dischargeable. The Bankruptcy Appellate Court then held that these costs were compensatory and dischargeable, reversing the Bankruptcy Court. We urge you to reverse. For a summary of the underlying misconduct, I just wanted to clear up maybe some misunderstandings. This is, you can read from the Nevada's Supreme Court's second suspension order in second ER 56 and 57. It says, Wyke acted knowingly as he made numerous small transfers of client property to his operating and personal account. Then, reading further on, Wyke knowingly converted client funds to benefit himself. The baseline sanction before consideration of aggravating and mitigating circumstances is disbarment. And the reason that's important is because the Supreme Court of Nevada typically follows the ABA model rules, and the ABA standards recommend disbarment in a case such as this. The reason that the Supreme Court of Nevada did not disbar Mr. Wyke is because it crafted a package, a disciplinary package, that it felt like could be more rehabilitative and more deterring. It noted that Mr. Wyke had paid clients, although it was not pleased, and this is quoting directly from the order again, his insistence that his misconduct is not serious was an aggravating factor. You know, I think we understand the underlying attorney conduct, but the more difficult question really is this interplay between the rules, 120 and 102, and then the bankruptcy code. Right, and the only reason, again, I bring that up is because of the package, and that's why it's so important, is understanding that this is a tool in the package. Disciplinary cost is one of the tools, and if you take away this tool, then all you're left with is either a longer suspension or disbarment. And so... Well, that may be the case. I mean, here's my specific question, is I know you're familiar with the Reed case in Nevada, and there the court's pretty clear that if you have a suspension or disbarment, you can't have a fine. And then, it's talking about, you know, contrary to 102 and the purpose of attorney discipline. Then you get to Rule 120, which is mandatory, and if it's mandatory, how can it be a penal sanction in a case where there's suspension or disbarment? I mean, it's a collision between those two principles, and so it seems to me that I appreciate that the bar created a package that it felt was appropriate, but the costs assessed under 120, which are mandatory, couldn't be a fine or a real sanction if you read it in conjunction with Rule 102 and the Reed case. So, can you explain how you get out of that conundrum? Sure, sure. I would know that historically, in attorney discipline, and this isn't just Nevada in most states, the monetary sanctions are usually costs, and costs are pretty high. Very rarely, and even in California, you notice that they recently added a provision for fines. Nevada actually has a provision for fine, but it's never used. We don't fine attorneys, it's almost always costs, is how we obtain the monetary sanctions. But again, it goes to the purpose of the rule, and I would clarify this, though, under Supreme Court Rule 120, it says that costs are assessed by the panel and the court in full or part. So, it is discretionary. When you look at the costs, they will look at the discipline overall, and there have been times where costs have been waived or reduced. And so, they're not automatic. In fact, some of them aren't even tied to actual costs. But what about the word mandatory under Rule 120? It's mandatory, but then there's discretion in how much you assess. The mandatory portion is, for a suspension, the $2,500. And so, that's the $2,500, for example, for a reprimand, it's $1,500, for a suspension, it's $2,500. That's mandatory, but it's not tied to an actual cost. So, that portion is mandatory, but it's flat. Right. In this case, essentially, Mr. Wakey was ordered, he owed $21,138.15, which is the figure we're dealing with here, in cost. And then, there were two mandatory $2,500 suspension fees, correct? I believe that the $21,000 total includes $2,500 for the first suspension and $2,500 for the second suspension. So, it's actually $16,000, roughly, in actual costs, and then $5,000 for those two suspensions. So, there were some, there was clearly some figures that were for compensation, not for  penalty. Yes. Most of that would be the transcript for the hearing. That's the largest expense. And the reason why these aren't dischargeable, if you look at 523A7, there's three prongs, right? And the first prong is, is it a penalty? Is it a fine, penalty, or forfeiture, is how the statute reads. Right. Exactly. We just assume that forfeiture isn't really in play. Fine, you could probably argue some of this is a fine, but I think the most apt word is penalty. And if you look at the definition, Black's Law Dictionary says a penalty is punishment for wrongdoing. And so, that's the key figure. Well, I guess we continue. In terms of 523A7, it is not dischargeable, one, if it's a fine, secondly, it is payable to and for the benefit of the governmental unit, and thirdly, it is not compensation for actual pecuniary cost. Those three factors, correct? Correct. Correct. Yeah, so when you look at it, you ask yourself, is it a penalty? Yes. Because it's a punishment for wrongdoing. But for Mr. Weick's misconduct, he would not have been assessed these costs. So it is clearly tied to the misconduct, that misconduct triggers this and it is punishment for that misconduct. Well, then it totally swallows up the matter of it is not compensation for actual pecuniary cost. Right. Well, I haven't gotten to the third prong yet. I agree. I agree with you. If you want to get to the third prong, I think the second prong everyone agrees that that fits. But not compensation for actual pecuniary loss. This is the problem. Actual pecuniary cost. Cost. Dammit, it says it is not compensation for actual pecuniary cost. Correct? That's the wording. I don't believe that's correct. If you look at the statute, it says pecuniary loss, not cost. I may be mistaken. I don't know. And if you look up, in fact, the 1898 original Bankruptcy Act said pecuniary loss. They carried that over. And so if you take, even if the word compensation is plain, the meaning is not, not in the historical context. And that's exactly what Kelly said, the Supreme Court in the Kelly decision, said you cannot interpret 523A7 based on the words alone. You have to look at the historical context. And if you look just at the word compensation, then that's what Justice Frankfurter called the pernicious oversimplification. Because the historical context is that pecuniary loss was a very narrowly tailored definition. And the penalty was a very broad definition. So when we had the Bankruptcy Act of 1978, what Kelly said is that same interpretation came with the 1978 Bankruptcy Act. Meaning penalties were interpreted broadly, and the compensation and pecuniary loss were interpreted very narrowly. So that's where the court really focused. And I think, you know, the problem with the bankruptcy appellate panel's ruling is they said, well, all Kelly did was create an exception. But it didn't create an exception. It didn't create an exception at all. If you read Kelly, Kelly, all they say is, on its face, the rule 523A7 creates a broad exception for penal, I can't remember the exact quote, I'm paraphrasing, for penal sanctions. So Kelly interpreted the plain language. It said that. It said on its face. It did not create an exception. What it said is, we recognize a historical exception that has been here since 1898. And we recognize that Congress's intent in drafting 523A7 was to carry this over into the 1978 Act. And because Congress intended that, you have to read 523A7 with that in mind. So you can't read 523A7 very narrowly and hyper-focus on one word like compensation. And that's exactly what the bankruptcy appellate panel did. They ignored pecuniary loss and they focused right on compensation. One thing in your briefing, you look, you cite the Seventh Circuit case, Zirinsky, and that's talking about criminal restitution. So it seems to me that if you don't go that out, which is an out-of-circuit case, you would look at our opinions from the Ninth Circuit, like Finley, or Taggart, or Cassas, and wouldn't, if Zirinsky were the law of the Ninth Circuit, those cases wouldn't have come out the way they did, would they? Correct. Okay, so we of course can't overrule a panel, so we're looking only at the Ninth Circuit precedent. And it seems to me in doing that, too, we have to take into account that California itself had a, I don't know if it was an amendment, but their statute basically says costs are penalties. And we don't have that in Nevada, right? Well, we do. Okay, and so where do I look in your rules to find costs are penalties? Again, if you look at, this was the issue in Mr. Weick's reinstatement order. And this was briefed, we both briefed 523A7, we briefed, we asked the court whether or not the primary purpose of discipline was penal, or whether it was to compensate. The Supreme Court said it was penal. And now, the Supreme Court in Claiborne, and Mr. Weick mentions this, has repeatedly said the primary purpose of attorney discipline is not to punish. But the problem is, it also says repeatedly that attorney discipline is for deterrence and rehabilitation. But don't, you know, those are kind of broad concepts, but don't we have to look at the Nevada case, read what seems to be the most significant case, and the Nevada rules? And how, I mean, BAP looked at this intersection between 120 and 102. So my, going back to my actual question, the question was, where in the rules do I find support for your position? If you look at... I will concede that it's not explicit in the rule, if that's what you mean. I agree, it's not explicit in the rule. So I'd have to interlineate purpose. But if you look at Taggart, when the court analyzed Taggart, they said, look, it's not in the rule. So we're going to divine your intent based off of history and reading the statute. And they said, look, we think your intent's compensatory. But then the legislature, California legislature, said, hey, wait a minute, that's not our intent. And every other state in the nation generally follows the ABA guidelines. And the ABA says, it's a sanction. And so they said, look, this is a sanction. Its intent is to deter and rehabilitate. So when the court came back and reviewed that the second time in Finley, they said, okay, you're right. We will honor your intent, your statement of intent. So it begs the question, does the Supreme Court of Nevada have to amend Rule 20 just to clarify its intent? Because notice the California legislature didn't actually change the rule all that much. All it did is amend by adding a statement of intent. Is that really necessary? Or can we, like in Middlesex, in that case, the Supreme Court already recognized the purpose of attorney discipline throughout the nation is to deter and rehabilitate. All right, counsel, you are way over. Yeah, for purposes of saving time for rebuttal. Mr. Weick. Thank you, Your Honors. Terry Weick on behalf of PROPER. And let me begin right with the court's questions. The Nevada Supreme Court, in my case, as Mr. Hoagie is arguing, imposed the cost as a rehabilitative measure. Well, that's not necessarily true. They imposed the cost in the matter of Enrico. And Enrico was a disbarred attorney in Nevada. And when they disbarred that attorney, they did not impose the sanctions under Supreme Court Rule 102. Interestingly, though, they mandated that and the reason why they didn't impose those sanctions under Rule 102 was because rehabilitation is not going to serve this attorney because he's now been disbarred. That was a ruling of the court. As to the cost, they did impose the cost under 120 on this attorney because they were not rehabilitative in nature. So the Supreme Court wants to interpret Supreme Court Rule 120 any way it wants depending upon the circumstances. That's because it's not in the language. That's because SCR 120 is not a penalty. And they've said so much explicitly in Claiborne. They identified that costs upon the disciplined attorney are not intended to be a penalty. They said that, not me. We're hearing today that this is a penalty under Supreme Court or under 523A7. Mr. Hoagie is arguing that this is a penalty. It's not a penalty because the Supreme Court has said disciplinary costs are not a penalty upon the disciplined attorney and that was in Claiborne. They made it clear. They also said that it also is compensation for pecuniary costs or loss. It doesn't matter because whether or not you use the word loss, as Mr. Hoagie explained, loss was a very narrow definition at the beginning of the code. As they expanded the code, they included the word cost, which basically means any debt. And that's where the costs come into play, is that this is a debt that is owed to the State Bar of Nevada for expenses that they incurred in their disciplinary proceedings. A lot of cases and disciplinary proceedings floating around here, as you know. I want to ask you about Findley because it seemed to me there, we were dealing with a situation where the California legislature had amended the statute and they basically said that costs are penalties. And as I understand Mr. Hoagie's argument, he's saying, well, that was basically a declaration made by the Nevada Supreme Court, in your case, in connection with the reinstatement. So therefore, in parallel with Findley, these also would be penalties. I understand that that's the State Bar's argument, but that's not what the Supreme Court said. The Supreme Court rejected Hoagie's argument that it was a fine penalty or forfeiture. And in fact, they said explicitly that this... You're talking about Reed now? No, I'm talking about my case. Oh, in your case. Okay. They specifically said that it was not a fine penalty or forfeiture, but it was a product of rehabilitation. Yet in the matter in Rico, they said those costs are not rehabilitation costs. So you got a difference of opinion based upon a statute which wasn't passed by the legislature in Nevada. It wasn't created as a matter of law like a regular state statute would. They're interpreting it any way they want and it conflicts with the bankruptcy code. Now the bankruptcy code preempts the law of the land. It is the law. And to the extent that... And it should be strictly construed in favor of the debtor. Now when the courts... It was passed by Congress with representatives from the state of Nevada there voting on the bankruptcy act. And they knew at that time that to overcome the bankruptcy, the statute needed to be narrowly construed because it was strict scrutiny. And in fact, because it needed to be narrowly construed, yes, Nevada needed to go back and look at their statutes as it pertains to bankruptcy discharge matters and whether or not they're going to comply with 523A7. They chose not to do so. We saw in 2001 in Taggart that the California Business and Professional Code did modify their statute in 2003 which led to Finley. Now Finley, interestingly enough, never got to the issue of whether or not it was still compensation for actual pecuniary loss. That's the interesting discussion that never happened in Finley. So because that discussion and argument was never made in Finley, they never got to the position of even if it is a fine, the third part of the statute says, and not compensation for pecuniary costs. Well, in Finley, that was a hybrid. So it did dovetail into that third realm which was never discussed in Finley. And then subsequently we heard in Scheer how the different courts' opinions have caused confusion among practitioners and the courts in interpreting whether or not disciplinary costs would be dischargeable. And in that case, they recognized- Involved arbitration fees, correct? Correct. Sure. Involved arbitration fees. And they said that they were dischargeable because they were compensatory. Compensatory, correct. Subsequently, we went to Albert Sheridan. The issue there was sanctions. And in Albert Sheridan, they also said that they recognized that the sanction was payable to a third party. But they also said specifically, but that doesn't matter either because it is compensation for actual pecuniary loss. Same thing, we go turn around and we go to Casas. Casas was payment to the client security fund in the state of California. And the court held that in that situation, we need not dive into the abyss of whether it's fine, penalty, or forfeiture. We don't even need to decide that issue because we know it's compensation for actual pecuniary loss. And we're done. That court, in my opinion, clarified the rules with respect to the discharge of actual pecuniary loss. It was essentially reimbursing the fund for monies paid specifically, right to the penny, whatever the figure was. Exactly. And there's some decisions out there throughout the country where if the penalty or whatever you want to say, the compensation for pecuniary loss is discretionary. Some of the courts have said that that serves as a fine. But I think that runs afoul of what is interesting in the plain language of 523 where it says, and not compensation for pecuniary loss. If so, even if you label it as a fine and it is compensation for pecuniary loss, you're circumventing the code by saying that it's non-dischargeable. Because it is dischargeable even if it's a finer penalty, if it is compensation for pecuniary loss. What do you make of the argument, though, that basically Nevada, like many other states, has essentially followed the ABA model code which characterizes this as a sanction or penalty, a sanction? Well, the ABA model code, I understand that. But there again, we're looking at the specific statute of 120 and how it's drafted. If they want to redraft 120 in accordance with the ABA, then that's fine. And I think that careful drafting, again, this is a strict scrutiny analysis and it needs to be narrowly tailored. The government needs to narrowly tailor their statutes to comply with the preemptive law of the bankruptcy code. And that they chose not to do. California's made some effort with the California Business and Professional Code, which is passed through their legislature. Remember, the Supreme Court rules aren't passed through the people of Nevada. They're passed and enforced by the strong arm of the state bar. That's it. There's no due process there. I don't have a right to a trial by jury, as in Kelly, Zaworski, I'm not going to butcher that name. Zaworski was a criminal case. Yes, they were criminal cases. They're afforded due process. And then whether or not restitution is dischargeable is questionable based upon Davenport even. But the bottom line is that those are criminal restitution cases afforded due process. They get a right by trial by jury. And we don't have that in Nevada. And we have the Supreme Court changing the rules based upon every case that's before it. Enrico, Reed, and Wyck, for instance. If we were to disagree with the state bar, what would we then do? Remand to the bankruptcy court with instructions to grant the motion for sanctions? Where would that leave us if we were to rule against the bar on their appeal? If that was the only remaining issue, yes, Your Honor. I believe that that would be the correct approach. And, you know, I understand Mr. Hoagie's argument, but I brought this up at the very beginning when I was before the reinstatement panel that this debt has been discharged. And at no time did the state bar of Nevada seek relief from the bankruptcy court to pursue this debt. So even if it was a debt and it wasn't a penalty, let's just say it wasn't a penalty. Let's just say it wasn't a penalty. It was just a debt that they felt I owed them. Well, then it was discharged also. It was discharged also. They tried to create an exception as it being a fine penalty, but then they forgot the third part of 523 because it was compensation for pecuniary loss. So even if they want to claim it's something other than a penalty, it's been discharged. Thank you, Your Honors. Thank you. I know I don't have a lot of time. I just really briefly wanted to clarify a couple things. First of all, the claim that Claiborne stated that these costs are not punishment, that's not what the case said. In Claiborne, they said the primary purpose of discipline is not punishment. Again, it was talking about the three theories of punishment. The first one, retribution, deterrence, rehabilitation. It said we focus on deterrence and rehabilitation. We are not here for retribution. It never said costs were not penalties. Second of all, this argument that the Supreme Court rejected that, if I could just have one minute, or 30 seconds. This is what the Supreme Court said. The panel disagreed with Weick's argument. This is ER 92. Concluding that SCR 120 costs owed to the State Bar are accepted from discharge and bankruptcy under 11 U.S.C. 523 because they constitute fines, penalties, or forfeitures payable to a government agency and are punitive, deterrent, and rehabilitative in nature. That's what it said, and it said we approve the panel's recommendation. So to say that the Supreme Court made its intent very clearly. Thank you. Okay. Thank you. Thanks to both of you. This matter is now submitted.
judges: McKEOWN, ALBA, Bennett